IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01036-PAB

BEVERLY O. BAIR,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

Defendant.

---

**ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER**

---

This matter comes before the Court on plaintiff Beverly O. Bair's Complaint [Docket No. 1] filed May 16, 2008. Plaintiff seeks review of defendant Michael J. Astrue's (the "Commissioner") final decision denying plaintiff's claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance and supplement security income benefits in February and March of 2006, alleging that she has been unable to work since September 5, 2002. R. 18. Her disability benefits claims were initially denied on September 12, 2006. *Id.* Plaintiff timely requested a hearing, which was held by an administrative law judge ("ALJ") on August 6, 2007. *Id.* At the hearing, the ALJ elicited testimony from a vocational expert to obtain evidence concerning plaintiff's ability to

work. The ALJ asked the vocational expert to opine on whether a person "able to perform work at the light level of exertion, which is not extraordinarily high in stress" would be able to perform any of plaintiff's past relevant work. R. 45. The vocational expert testified that such a person could still perform plaintiff's past job as a bookkeeper, but identified no other available jobs. R. 46. The ALJ did not ask the vocational expert if any other substantial gainful activity exists that would be accessible to the plaintiff. R. 45-46. On August 24, 2007, the ALJ issued a decision finding that plaintiff is not disabled within the meaning of the Act. R. 18-25. The ALJ based her decision on the vocational expert testimony that plaintiff can perform her past work as a bookkeeper. R. 24. Following this unfavorable decision, plaintiff timely requested review by the Appeals Council. The Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner. R. 3-6.

Plaintiff was over the age of 55 as of her alleged onset date. She cited "diminished capacity," arthritis, and depression, among other things, as the basis for her disability. R. 135. Plaintiff indicated the longest job she has held was the position of bookkeeper for an automotive glass company, where she worked from 1985 to September 2002. R. 136. Plaintiff also worked as a receptionist between June 2004 and August 2005. *Id.* Although she testified to the ALJ that none of her conditions had improved, she was working on a part-time basis at the time of the hearing, due to financial need. R. 31-32. The record in this case contains only a few medical opinions. Pertinent to this appeal, evidence concerning plaintiff's mental condition is largely contained in evaluations completed by Joseph Kahler, Ph.D. on July 26, 2006, and two consultative examination reports authored by Brad. A. Marten, Psy.D. and Mark J.

Fesler, M.D., on June 12, 2006 and August 18, 2006, respectively. R. 187-220, 180-85, 224-28. I discuss these medical records as relevant to my analysis herein. Plaintiff challenges the Commissioner's final decision on the grounds that the ALJ's decision was not supported by substantial evidence because the ALJ, while adopting the medical opinion of Dr. Kahler, did not similarly adopt all the limitations on plaintiff's mental functional capacity that Dr. Kahler mentioned in his evaluation.

## II. ANALYSIS

### A. Standard of Review

This Court reviews the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir.2003). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

In reviewing the Commissioner's decision, the Court cannot "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. "Under

the Social Security Act, the claimant has the burden of proving a disability." *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991). On the other hand, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn of the claimant's own version of those facts." *Id.* (internal quotation marks omitted).

**B. Evaluation of the ALJ's Decision**

To be considered disabled under the Act, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). The Commissioner has established a five step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 248, 250 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).

In this case, the ALJ found that plaintiff was not disabled at step four of the sequential evaluation. At step two, the ALJ found that plaintiff's depression constitutes a severe impairment and, giving plaintiff "the maximum benefit of the doubt," found that she also has a severe impairment of her lower extremities. R. 22. Because the ALJ found that neither of these impairments came within the listing criteria at step three, the

ALJ proceeded to assess plaintiff's residual functional capacity ("RFC"). Specifically, the ALJ found that plaintiff maintains the RFC "to perform light work that is not extraordinarily high in stress." R. 24. Based on testimony from a vocational expert elicited by the ALJ during an August 6, 2007 hearing on plaintiff's applications, the ALJ concluded that plaintiff's RFC enables her to perform her past relevant work as a bookkeeper. *Id.* The issue presented in this appeal is whether the ALJ's conclusion at step four that plaintiff's RFC allows her to perform her past work as a bookkeeper is supported by substantial evidence even though the ALJ did not include certain limitations relating to plaintiff's mental functional capacity in his RFC finding and hypothetical questions posed to the vocational expert.

The ALJ's decision shows that the ALJ considered medical opinions of Dr. Marten, Dr. Kahler, and Dr. Fesler, among other medical sources, to determine plaintiff's RFC and to formulate questions for the vocational expert. R. 19-24. Of particular note, the ALJ adopted Dr. Kahler's opinion "as representative of the claimant's true mental residual functional capacity," and accepted Dr. Fesler's opinion "as representative of the claimant's true physical residual functional capacity." R. 22. Plaintiff challenges only the ALJ's consideration of her mental residual functional capacity. Thus, in their briefing, both plaintiff and the Commissioner focus on the issue of the ALJ's incorporation of Dr. Kahler's opinion into the questions posed to the vocational expert and into the RFC determination. Accordingly, I direct my review to whether the ALJ properly incorporated all of plaintiff's limitations into her RFC determination and hypothetical questions posed to the vocational expert.

Dr. Kahler, a State agency psychologist, completed a psychiatric examination of

plaintiff and completed a number of standard evaluation forms rating plaintiff's limitations and appending his comments. Most significantly, Dr. Kahler indicated that plaintiff is "moderately limited" in her ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to accept instructions and respond appropriately to criticism from supervisors. R. 203-04. Dr. Kahler included narrative discussions on two of the medical evaluation forms he completed expressing the same overall conclusion regarding plaintiff's limitations and work capacity: "the claimant appears to retain the capacity for moderately complex, low stress work, with few social demands." R. 205, 219.

In her decision, the ALJ stated that Dr. Kahler found plaintiff to have "mild limitations on maintaining concentration, adhering to a work schedule, and accepting criticism from supervisors." R. 21. The Commissioner admits that the ALJ's misstatement of the "moderate" limitations identified by Dr. Kahler as only "mild" was error. *See* Def.'s Resp. Br. [Docket No. 10] at 7. Translating this error to the RFC context, the Commissioner posits that "substantial evidence would have supported a finding that Plaintiff retained the residual functional capacity to perform light work that was not extraordinarily high in stress, was moderately complex, and that required little social interaction." Def.'s Resp. Br. at 9. Thus, the Commissioner properly concedes that the ALJ's RFC and the hypothetical questions she posed to the vocational expert failed to include some of the limitations ascribed to plaintiff by Dr. Kahler, namely,

limiting plaintiff to moderately complex work with few social demands. *Id.* Nonetheless, the Commissioner argues that this error was harmless.

The Commissioner claims that the ALJ's error was harmless because, even if the vocational expert was presented with all of the limitations that Dr. Kahler ascribed to plaintiff, he would have given the same testimony. That is, the Commissioner argues that the vocational expert would have testified that a person having the RFC found by the ALJ – ability to perform light work not extraordinarily high in stress – who could perform only moderately complex work with few social demands, would be able to perform the job of bookkeeper. As noted by the Commissioner, the Tenth Circuit has applied the doctrine of harmless error in social security appeals. In *Fischer-Ross v. Barnhart*, 431 F.3d at 733-34, the Court of Appeals explained that "harmless error analysis . . . may be appropriate to supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder following the correct analysis, could have resolved the factual matter in any other way." Because I conclude that a reasonable administrative factfinder employing the correct analysis could have found plaintiff incapable of performing her past relevant work as a bookkeeper, I find that the ALJ's errors were not harmless.

As an initial matter, the Commissioner's argument does not concede enough. The ALJ's RFC (and hypothetical questions) did not mirror the limitation set forth in Dr. Kahler's opinion with regard to plaintiff's stress tolerance. Whereas Dr. Kahler would limit plaintiff to "low stress" work only, the ALJ asked the vocational expert about jobs that would not be "extraordinarily high in stress." R. 45. The ALJ's formulation would

allow a vocational expert to include jobs with moderate or even high levels of stress within the ambit of work available to plaintiff. But the range of jobs available to plaintiff could be much narrower if limited only to "low stress" work. The Commissioner cites the Dictionary of Occupational Titles and cases from the Seventh and Eighth Circuits for the proposition that bookkeeping is an occupation that does not impose significant social demands or involve more than moderately complex work. The Commissioner does not, however, direct the Court to any authority demonstrating that the job of bookkeeper presents only low stress work scenarios. The Court cannot confidently say that, in every instance, a vocational expert would testify that a person limited to only low stress work would be able to perform the job of bookkeeper. *Cf. Hibbits v. Barnhart*, No. 01-2278, 2002 WL 1298758, *3 (N.D. Cal. June 7, 2002) (vocational expert testified that plaintiff could not perform past work as a bookkeeper because some level of stress was inherent due to the accuracy and precision required by the job); *Iezzi v. Bowen*, No. 86-0476, 1987 WL 13753, *1 (E.D. Pa. July 14, 1987) (noting that ALJ found that plaintiff's past relevant work as a bookkeeper involved "a high degree of stress").

Thus, the ALJ's error in formulating her hypothetical questions and determining plaintiff's RFC was not harmless because another administrative factfinder may well have determined plaintiff could not perform the job of bookkeeper if such factfinder had incorporated all limitations supported by Dr. Kahler's medical opinion. The Commissioner does not argue that the mental limitations found by Dr. Kahler were not founded in the medical evidence. Indeed, there is ample record support for Dr. Kahler's limitations on stress, complexity, and social interaction. For example, Dr. Fesler, who examined plaintiff on August 19, 2006, noted during his examination of plaintiff that she

had "a completely flat affect and actually admits of being frankly depressed," and that she "broke out crying a number of times during the interview." R. 225. Dr. Fesler opined that plaintiff "suffers from profound depression." R. 227. Dr. Marten, who conducted a psychiatric examination of plaintiff on June 12, 2006, noted that her mood shifted at times during the examination from amiable and cooperative to anxious, tearful, and somewhat irritable. R. 180. Dr. Marten concluded that plaintiff had mild to moderate difficulty with short term memory recall and that "[o]verall, she appears to present with a mild decrease in psychosocial functioning when compared to the past year." R. 185. In short, the medical evidence of record supported Dr. Kahler's indication that plaintiff should work only in settings that present low stress, few social demands, and moderate or lower levels of complexity. Because the ALJ stated that she accepted Dr. Kahler's opinion as representative of plaintiff's true mental residual functional capacity, it was incumbent on the ALJ to, at minimum, explain why she did not include the foregoing limitations in plaintiff's RFC and her hypothetical questions. *See* Social Security Ruling 96-8p, 1996 WL 374184, *7 (S.S.A. July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

The vocational expert testified that plaintiff did not have any transferable work skills from her past employment. R. 46. Therefore, under Medical Vocational Guideline 202.06 of 20 C.F.R. Pt. 404, Subpt. P, App. 2, plaintiff may have been found disabled if she is not capable of performing her past work as a bookkeeper. Since I find that another vocational expert presented with all the limitations suggested by Dr. Kahler might have testified that plaintiff was not able to work as a bookkeeper, it follows that an

ALJ could have found plaintiff disabled. Ultimately, the Court cannot supply the missing analysis in the ALJ's decision as to whether plaintiff does, in fact, experience all the limitations that Dr. Kahler suggested, because it is not a function of my review to weigh the medical opinion evidence. *See Flaherty*, 515 F.3d at 1070. Therefore, this case must be remanded for reconsideration of plaintiff's RFC.

**III. CONCLUSION**

Plaintiff has informed the Court that the Commissioner awarded her disability benefits on a subsequent application that plaintiff filed with an onset date of August 30, 2008, although plaintiff does not specify whether such benefits are for disability insurance or supplemental security income [*See* Notice of Award of Benefits on Separate Filing, Docket No. 15]. Accordingly, on remand, the Commissioner's consideration shall be limited to the issue of whether plaintiff was under a disability between her initial alleged onset date of September 5, 2002 and August 30, 2008. Because I conclude that the Commissioner's decision that plaintiff was not under a disability within the meaning of the Act during that time frame was not supported by substantial evidence, it is

**ORDERED** that the Commissioner's final determination that plaintiff is not disabled under the Act is REVERSED. This case is REMANDED to the Commissioner for additional proceedings in accordance with this Order. It is further

**ORDERED** that plaintiff Beverly O. Bair is awarded her costs. *See* Fed. R. Civ. P. 54(d)(1); D.C.COLO.LCivR 54.1; 28 U.S.C. § 2412(a)(1).

DATED July 31, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge